STATE of Missouri, Respondent,

v.

Harold Dean RITTERBACH, Appellant.

No. 12351.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 9, 1982.

John D. Ashcroft, Atty. Gen., Kelly S. Klopfenstein, Asst. Atty. Gen., Jefferson City, for respondent.

John H. Wright, Springfield, for appellant.

TITUS, Judge.

Pursuant to a felony information filed in Greene County, defendant was jury-convicted of "selling lysergic acid diethylamide" (LSD), a Schedule I controlled substance, to an undercover Springfield Police Officer in violation of § 195.020 RSMo 1978. Punishment was assessed by the jury at 30 years' imprisonment. § 195.200.1(4). The trial court accordingly entered judgment upon the verdict and defendant perfected his appeal to this court.

On April 6, 1980, Steve Lawrence was employed by the Springfield Police Department as a confidential informant to investigate drug trafficking. Lawrence, while working in his capacity as an undercover agent, telephoned the defendant and "asked

him if he had anything for sale." Defendant replied in the affirmative, stating that he had some methamphetamine or "crank" for sale. Lawrence then contacted Springfield Police Officer Art Crist, who was working in the special investigations unit involved primarily in drug related investigations. Lawrence and Crist proceeded to defendant's house on West Nichols Street. Upon their arrival, Lawrence entered the house through the back door while Officer Crist remained in the automobile. Defendant and several other people were in the living room of the house. Defendant informed Lawrence that he had sold the "crank," but had some LSD for Lawrence's "friend ... in the car." Lawrence then went outside and instructed Officer Crist to accompany him back into the house. After apologizing for not being able to provide Crist with the methamphetamine, defendant offered to sell Crist a quantity of "purple micro-dots" (slang for LSD) for four dollars ($4.00) apiece. Officer Crist stated to defendant that he desired to purchase five mocro-dot tablets whereupon defendant went to a room immediately north of the living room and, after a slight absence, brought back an aluminum foil packet which defendant placed on the coffee table in front of Lawrence and Crist. Officer Crist opened the packet and found "five round, kind of brownish-purple tablets." He then paid defendant with two ten-dollar bills and after small talk, left with Steve Lawrence. Chemical analysis of the tablets proved that they were lysergic acid diethylamide, a Schedule I controlled substance. § 195.017.

Defendant's first point contends that the trial court erred in overruling his motion for judgment of acquittal at the close of the state's case-in-chief because the evidence was insufficient to sustain a conviction, for the state's case "rested solely on circumstantial evidence which was consistent with a reasonable hypothesis of defendant's innocence." Defendant's second and third points allege the trial court erred in respectively overruling defendant's motion for judgment of acquittal at the end of all the evidence and in overruling defendant's mo-

tion for judgment of acquittal notwithstanding the verdict for the same reasons as stated in point one, supra.

Initially we note as to point one that defendant waived any objection to overruling the motion at the conclusion of the state's case when he put on testimony in his own behalf. *State v. Ritterbach,* 627 S.W.2d 894, 896[1] (Mo.App. 1982) and cases therein cited. Furthermore, in determining whether there is insufficient evidence to sustain a criminal conviction we must accept as true all evidence, direct and circumstantial, and all reasonable inferences which are most favorable to the state and disregard the evidence and inferences contrary to a finding of guilt. Our appellate function is not to weigh the evidence, but rather, to determine whether there was substantial evidence to support the jury verdict. Substantial evidence means evidence from which the trier of facts could find the issue in harmony therewith. *State v. Turner,* 623 S.W.2d 4, 6[1, 2] (Mo. banc 1981); *State v. Clark,* 596 S.W.2d 747, 749[1–4] (Mo. App. 1980).

Steve Lawrence and Officer Crist both testified about the chronology of events which led to the sale of the five "purple micro-dots" by defendant to Crist. The micro-dots were analyzed in the Region II Crime Laboratory and the laboratory chemist, who was qualified as an expert at trial, testified the tablets were indeed lysergic acid diethylamide. An "independent chemical analysis of the materials and substances seized on April 6, 1980" was requested by defendant. The analysis conducted by Dr. James Gibbons, a college chemistry professor and who was also qualified as an expert, resulted in the same determination—the purple micro-dots were LSD.

Despite this evidence, defendant would have us believe the evidence presented is entirely circumstantial and as such the conviction cannot be sustained because it does not preclude defendant's reasonable hypothesis of innocence. *State v. Biddle,* 599 S.W.2d 182, 191–192[7–8] (Mo. banc 1980). However, the circumstantial evi-

dence rule only applies when *all* of the evidence is circumstantial and there is no direct evidence. *State v. Holman,* 556 S.W.2d 499, 508[21] (Mo. App. 1977). In the case at bar, the only evidence presented, save that of defendant's which we must disbelieve except where it supports the verdict of guilt [*State v. Turner,* supra], was elicited from those witnesses who were directly involved with the procurement and chemical analysis of the illegal hallucinogenic substance. Such testimony was direct evidence, not circumstantial as claimed by defendant, which has been defined as "evidence which, if believed, proves the existence of facts in issue without inference or presumption." *State v. Scaturro,* 509 S.W.2d 491, 493[1] (Mo. App. 1974). We find, based on the aforementioned facts and authority, there was substantial evidence to sustain the jury's verdict of guilt. Defendant's first three points are denied.

■ Defendant's penultimate point: "The court erred in overruling defendant's challenges to certain members of the jury whose opinions were prejudicial to defendant and denied him his right to a fair trial." The point, penned in utter disregard to the mandatory requirements of Supreme Court Rule 30.06(d), V.A.M.R., does not state wherein and why the opinions (whatever they were) of the jurors prejudiced the defendant. We have no duty to sift through the transcript or the argument portion of the appellate brief to determine the intendments of an abstractly written point. Such a point preserves nothing for appellate review. *State v. Holt,* 603 S.W.2d 698, 701[1, 2] (Mo. App. 1980). However, because we afforded defendant no opportunity to correct his derelictions per Rule 30.09, we will decide the merits, if any, of the point.

■ The basis of the first challenge of a juror was that the venirewoman was familiar with another person who had used LSD. However, when she was asked, knowing the results of whatever happened to that other individual if that might partially interfere with her judgment in this case, the challenged venirewoman answered, "Absolutely not." The judge then denied a request to excuse the venirewoman. "As for nonstatutory challenges, the rule is that the trial judge is vested with broad discretion, that his decision should not be overturned unless there is a clear abuse of discretion, and that any doubts are to be resolved in favor of the trial judge's decision." *State v. Reynolds,* 619 S.W.2d 741, 749[7] (Mo. 1981). Further, the trial court is in a better position to observe the demeanor and assess the qualifications of veniremen and appellate courts will defer to the trial court's discretion regarding veniremen. *State v. Thomas,* 596 S.W.2d 409, 412–413 (Mo. banc 1980). Here the venirewoman affirmatively stated that her knowledge of another person's use of LSD would not affect or bias her judgment in the present case. Moreover, it is incredibly ironic that defendant challenges this venirewoman at all for she was stricken from the panel as a result of defendant's peremptory challenge at the end of voir dire. § 546.180. There is no objective evidence of this juror's biasness or partiality to the state and defendant rightfully exercised his right to strike the juror with a peremptive challenge based on his "sense" of juror partiality. See *State v. Thompson,* 541 S.W.2d 16, 17 (Mo. App. 1976). We find no abuse of discretion regarding this juror and deny the point as it relates to her.

■ The second venireman was challenged because he knew the Greene County sheriff. When asked if knowing the sheriff "would impair your judgment in this case at all?" the venireman replied "No." Again the trial court denied defendant's request that the venireman be removed. A friendship or other relationship with a law enforcement officer does not serve to disqualify a juror especially where, as here, the juror states that the relationship will not affect his judgment in the case to be tried. *State v. Eaton,* 504 S.W.2d 12, 17 (Mo. 1973). Again, we find no abuse of discretion and deny the point as it relates to the venireman.

In his fifth and final point, defendant contends the trial court erred in overruling defendant's objection to a line of questions asked by respondent relating to "the nature

of any cases now pending on appeal against the defendant." Defendant testified at trial and during his direct examination, the following colloquy took place: "Q. Do you have any reason to know why Mr. Lawrence and Mr. Crist are today alleging that you did sell these items to them? * * * A. Well, I gather it's because I've got another case on appeal." On cross-examination of defendant, respondent inquired into the type of case defendant had on appeal. Defendant's objection was overruled because the subject "was opened up on direct examination." Defendant, however, admitted that he had been convicted earlier of a misdemeanor for possession of marijuana which was not on appeal. Furthermore, notwithstanding the fact that he objected to respondent's inquiry about the past convictions, defense counsel on redirect examination queried defendant about the type of defense used in those cases and about other matters concerning the cases.

Defendant relies primarily on *State v. Blevins*, 425 S.W.2d 155 (Mo. 1968). That case holds that reversible error occurs when a conviction, which is in the process of being appealed and therefore not finalized, is used to impeach the testimony of the defendant in another trial. § 491.050; *State v. Blevins*, supra at 158–159. Although the legislature changed § 491.050 to include impeachment through the use of "findings of guilty," the statute did not become effective until September 28, 1981 and the trial was held in June 1981. § 491.050 Cumulative Supplement (1981). Therefore, the holding of *Blevins* remained in effect at the time of the trial.

 A criminal defendant, as any other witness, may be impeached and contradicted. § 546.260; *State v. Ford*, 623 S.W.2d 574, 575[2] (Mo. App. 1981). Respondent's inquiry into defendant's conviction on appeal may have been error, but it was harmless in light of the overwhelming evidence supporting the conviction. The use of invalid prior convictions is harmless where the evidence against the defendant is strong and where, as here, valid convictions are also used to impeach the credibility of

the defendant. *Richardson v. State*, 617 S.W.2d 76, 78[6] (Mo. App. 1981); *State v. Browner*, 587 S.W.2d 948, 956[18] (Mo. App. 1979). Moreover, defendant waived his objections to the line of questions about his prior convictions when on redirect examination his attorney asked and he answered questions concerning the very cases he objected to on cross-examination by the respondent. See *State v. Walker*, 416 S.W.2d 134, 141–142 (Mo. 1967). Defendant's fifth point is denied.

Judgment affirmed.

GREENE, P.J., and FLANIGAN, J., concur.